579 So.2d 320 (1991)
James HANNA, Etc., et al., Appellants,
v.
The CITY OF PALM BAY, Etc., et al., Appellees.
No. 90-1293.
District Court of Appeal of Florida, Fifth District.
May 9, 1991.
Vincent G. Torpy, Jr., of Frese, Fallace, Nash & Torpy, P.A., Melbourne, for appellants.
*321 Nicholas F. Tsamoutales of Nicholas F. Tsamoutales, P.A., Palm Bay, for appellees.
COBB, Judge.
The issue on this appeal concerns the validity of a special assessment and whether it can be utilized for the purpose of street resurfacing in selected areas of the City of Palm Bay, Florida.
The City of Palm Bay implemented a program to rehabilitate all of its paved streets over a fifteen-year period. It was believed this would minimize the maintenance and recurring upkeep which had previously come from the general fund of the City on an as-needed basis. Unfortunately, the millage rate of the City was insufficient to cover these additional expenses,[1] and based on the recommendation of the City Manager, the City decided to use special assessments pursuant to Chapter 170, Florida Statutes.
Several projects were completed in 1983 using special assessments as a funding source. Subsequent to this, several selected streets (referred to as Group A and B), were to be resurfaced by means of a special assessment. The City implemented the assessments by resolution and equalization hearings were held throughout 1986. The special assessments[2] were levied on property that abutted the improvements.
The appellants (plaintiffs below), Hanna, et al., brought a class action counterclaim to challenge the legality of the special assessments levied by the City. A non-jury trial was held and the trial court entered a final judgment wherein it found that the City had made a legislative determination of "benefit" and that pursuant to section 170.06, the assessment reflected that benefit. The court also made the following finding:
4. Though the improvements might have been part of a plan to repave and maintain all the streets within the city, the fact that the work was funded by special assessment does not invalidate the process. The former city manager testified at trial that the city tried, on three (3) occasions, to increase the millage to do repairs prior to the special assessments, and all three (3) times, the voters turned it down. He testified the only source to fund the improvements was via special assessment. The city clerk testified that three-fourths of those assessed in Group A and Group B have paid their assessment.
Finally, the trial court found that the Group A and B assessments complied with the law "in all respects," with the exception of a portion of one road.
After denial of a timely motion for rehearing, Hanna filed the instant appeal urging that special assessments pursuant to Chapter 170 may not be used by the City of Palm Bay to fund the cost of resurfacing all City streets over a fifteen-year period.
It is axiomatic that there is a presumption of a special benefit to all property abutting on a street which is being improved. Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 So. 118 (1922). See also City of Treasure Island v. Strong, 215 So.2d 473 (Fla. 1968). Furthermore, a legislative determination of a special benefit carries a presumption of correctness. Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969); Anderson v. City of North Miami, 99 So.2d 861 (Fla. 1957).
It is undisputed that the "construction, reconstruction, repair, paving, repaving, hard surfacing, rehard surfacing, widening, guttering and draining of streets, boulevards and alleys" is authorized by Florida Statute 170.01(1)(a). The question is whether the assessed abutting property owners have been provided "a benefit which is different in type or degree from *322 benefits provided to the community as a whole." See § 170.01(2), Fla. Stat. (1989).
Upon consideration of the various cases presented by the parties to this appeal, we are constrained to agree with the appellants that there is no authority for the proposition that a city-wide repaving project can be financed by special assessments against abutting property owners on the theory that each such owner somehow receives a benefit therefrom different in type or degree from the benefit provided to the community as a whole. Obviously, that is not true. If the special assessments utilized in this case are valid, then the limitation in regard to such assessments expressly provided in section 170.01(2) is rendered meaningless. That subsection expressly provides:
(2) Special assessments may be levied only for the purposes enumerated in this section and shall be levied only on benefited real property at a rate of assessment based on the special benefit accruing to such property from such improvements when the improvements funded by the special assessment provide a benefit which is different in type or degree from benefits provided to the community as a whole.
The special assessment method of funding local improvements is a creature of statute. There exists no inherent police power for levying special assessments to fund local improvements. Anderson; Simpson v. City of Brooksville, 137 Fla. 623, 188 So. 794 (1939); City of Coral Gables v. Coral Gables, 119 Fla. 30, 160 So. 476 (1935). Therefore, the City of Palm Bay cannot circumvent the limitations of subsection (2) quoted above.
We agree with the succinct exposition of the applicable law as set forth in the appellants' Initial Brief:
When a public improvement imposes a benefit upon individual homeowners no different than that which is imposed upon the community at large, the individual homeowners cannot be made to bear the burden of the cost of the improvement. City of Fort Myers v. State, [95 Fla. 704] 117 So. 97 (Fla. 1928). This legal premise is based upon two important policy considerations. First, because the Florida Constitution sets forth an exception to the homestead exemption for improvements that specifically benefit the homestead, the requirement of a special benefit conferred must be rigorously adhered to in order to avoid the circumvention of the constitutional exemption from forced sale of the homestead. Fisher v. Board of County Commissioners, 84 So.2d 572 (Fla. 1956). A second important policy consideration is that there exists no need for voter approval when a public improvement project is funded by virtue of special assessments, and the cost of the improvement is not spread among all of those who use the services of the City by use of ad valorem tax revenues, fees, and other revenue sources and; rather, the individual, affected homeowners, who have no vote in the levy of the assessment, are held responsible for the full cost of the improvement. It is imperative, therefore, that only improvements that provide a special and peculiar benefit to affected property owners are funded through such a revenue vehicle. Id.

The term "special benefit" refers to a peculiar benefit to the particular parcel of property that is being assessed. To constitute a special benefit, the improvement must add something to the usual market value of the assessed property. Fisher v. Board of County Commissioners, 84 So.2d 572 (Fla. 1956). Furthermore, even if a benefit is conferred upon particular parcels of property, if the benefit is the same or similar to that which is conferred upon the community at large, the individual homeowner may not be assessed for a prorata cost of the improvement, and a special benefit may never be inferred on the theory that all similar situated parcels were benefited in the ratio that such parcels relate to the total value of all improved parcels. St. Lucie County v. Higgs, 141 So.2d 744 (Fla. 1962).
* * * * * *

*323 At bar, the challenged special assessments were indisputably part of a long range program under which all of the City-maintained streets were to be reconditioned to a point where annual maintenance costs would be greatly diminished, thereby relieving the tax burden imposed upon the general fund of the City of Palm Bay. The instant assessments, therefore, were part of a program intended to benefit the taxpayers and community at large by upgrading all City-maintained streets and by diminishing the burden placed upon other sources of revenue comprising the general fund of the City of Palm Bay. Under the guise of special assessments, therefore, the City of Palm Bay merely shifted its responsibility for the maintenance of streets onto individual property owners rather than spreading the cost of maintenance over the community at large by use of ad valorem tax revenues, utility tax revenues, fees from occupational licenses, franchise fees, and other available sources of revenue that contributed to the general fund of the City. By doing so, the City completely ignored the express limitation on special assessments that the benefit conferred upon the homeowners be "different in type or degree from the benefits conferred to the community as a whole."
The judgment of the trial court acknowledged that the improvements at issue may have been part of a plan to repave and maintain all streets within the City, but found this to be offset by the fact that the City had tried on three occasions to increase the millage to fund this project, and each time was turned down by the voters. Under the reasoning of the trial court, any special assessment would be justified, irrespective of whether any special benefit is conferred upon individual homeowners, provided that the City first unsuccessfully attempts to pay for the improvement with increased millage rates. This judicially created exception to the special benefit requirement has no basis in statutory or case law, and violates the policy considerations underlying that requirement.
In this case, the City apparently recognized, at least initially, that its maintenance responsibility for all of the City streets should be funded from general revenue sources. The legal alternative left to the City fathers by the voters' rejection of their paving project was to forego the repaving until such time as the voters may decide otherwise.
REVERSED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] The City had attempted on three prior occasions to increase the millage rate in order to provide a tax base from which such road repairs could be funded.
[2] The City issued bonds to pay for the cost of the improvements and the liens created by Chapter 170 were pledged as security for the bonds.