656 So.2d 512 (1995)
Lizzie Mae HARRIS, Wanda M. Townsend, and Ellis Townsend, Appellants,
v.
Dale WILSON, James Jett, Larry Lancaster, Patrick McGovern, and George Bush, as constituting the Board of Clay County Commissioners; Clay County, a Political Subdivision of the State of Florida, Appellees.
No. 93-3445.
District Court of Appeal of Florida, First District.
May 25, 1995.
Rehearing Denied July 10, 1995.
*513 Gloria A. Einstein, Jacksonville Area Legal Aid, Inc., Orange Park, for appellants.
Robert L. Nabors, Gregory Stewart, and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee; Mark H. Scruby, Clay County Atty., Green Cove Springs, for appellees.
Alice M. Vickers, for amicus curiae, Fla. Legal Services, Inc.
WOLF, Judge.
Appellants challenge a final summary judgment determining that a special assessment imposed by appellee, Clay County (county) for financing solid waste disposal was valid. Appellants raise a number of issues which may be consolidated and restated as whether the trial court correctly determined that no material factual disputes existed concerning the validity of the assessment. Appellants asserted that as a general proposition a special assessment for providing for solid waste disposal services throughout an entire geographical area (which service was previously funded through tipping fees) on a particular class of property was an invalid tax. We find that the trial court properly rejected this general assertion. In addition, no disputed issues of material facts remain concerning whether the properties subject to this assessment received a special benefit, and whether this assessment is fairly and reasonably apportioned among the properties that receive the special benefit. We therefore affirm.
In 1992, Clay County enacted an ordinance imposing a partial year special assessment (ordinance 93-26) applicable only to residential properties in the unincorporated areas of the county for the maintenance of county solid waste facilities. The assessment was for $63 per residential dwelling unit. Commercial properties and undeveloped properties were not subject to the assessment. Appellants are homeowners subject to the assessment.
Appellants brought two separate actions (which were later consolidated), challenging the assessment. The county filed a motion for summary judgment. In support of the motion, the county filed an affidavit from the interim county manager (formerly solid waste director), and an affidavit of a consultant who assisted in the preparation of the partial solid waste disposal assessment for the county. The affidavits outlined the assessment adoption process and in addition, alleged that the amount of the assessment was apportioned to the properties subject to the assessment in an amount equal to or less than the benefit received by such properties. The affidavits further provided (1) that the cost of providing for the processing and disposal of solid waste from properties located within the municipalities and for commercial and other nonresidential properties within the unincorporated area are collected through tipping fees at the disposal site, (2) that the tipping fees imposed are equal to the cost of the processing and disposal of the solid waste generated from such properties, and (3) that the determination not to impose the partial year solid waste disposal assessment upon commercial properties in the unincorporated area is based upon the varying production of solid waste generated from commercial properties.
The trial court also had before it the ordinances adopting the assessment, which made specific findings as to (1) the rationale for not imposing the partial year solid waste disposal assessment within the municipal boundaries, and (2) how the residential properties subject to the partial year solid waste disposal assessment were benefitted by the processing and disposal of the solid waste generated from their properties. Further, the board expressly made various findings of benefit in the Final Assessment Resolution. These included the availability of solid waste disposal facilities to properly and safely dispose of solid waste generated on improved residential lands, closure and long-term monitoring *514 of the facilities, a potential increase in value to improved residential lands, service to owners and tenants, and the enhancement of environmentally responsible use and enjoyment of residential land.
On August 31, 1993, the date of the summary judgment hearing,[1] plaintiffs filed a supplemental response to defendant's motion for summary judgment with attached copies of documents concerning the alleged process of calculating the assessment. While the documents had been provided by the county in response to a request to produce, no affidavit was filed authenticating the documents, nor was any backup provided concerning the context in which the documents had been produced. The trial court refused to admit the documents, and granted final summary judgment in favor of the county.
In City of Boca Raton v. State, 595 So.2d 25, 29 (Fla. 1992), the supreme court recognized that a special assessment is not a tax and is, thus, not subject to the preemption of taxation to the state pursuant to article VII, section 1(a) of the Florida Constitution.[2]
However, a legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment. City of Naples v. Moon, 269 So.2d 355 (Fla. 1972).[3]
In City of Boca Raton, the supreme court said that there are only two factors in determining whether a special assessment is valid.
There are two requirements for the imposition of a valid special assessment. First, the property assessed must derive a special benefit from the service provided. Atlantic Coast Line R.R. v. City of Gainesville, 83 Fla. 275, 91 So. 118 (1922). Second, the assessment must be fairly and reasonably apportioned among the properties that receive the special benefit. South Trail Fire Control Dist. v. State, 273 So.2d 380 (Fla. 1973). Thus, a special assessment is distinguished from a tax because of its special benefit and fair apportionment.
Id. at 29.
Appellant essentially argues that the levy is not valid because (1) a special assessment may not be levied throughout an entire taxing unit, (2) that special assessments are not appropriate for the provision of certain services such as stormwater or solid waste, see Sarasota County v. Sarasota Church of Christ, 641 So.2d 900 (Fla. 2d DCA 1994), and (3) that questions of fact were presented concerning the apportionment of benefits in light of the documents which were improperly rejected by the trial court. We disagree with these contentions.
The first two issues concern whether the properties in question were specially benefitted. In Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994), this court was asked to determine the validity of a special assessment for solid waste disposal, and found that properties may receive a special benefit from services such as solid waste disposal.
Regarding appellee Foxx's contention that special assessments may not be used to fund services, but only capital improvements, we note that a similar argument was considered and rejected by the court in Charlotte County v. Fiske, 350 So.2d 578, 580 (Fla. 2d DCA 1977). Moreover, we cannot overlook the considerable Florida case law that has permitted the imposition *515 of special assessments, even when no capital improvements were involved. See, e.g., South Trail Fire Control Dist., Sarasota County v. State, 273 So.2d 380 (Fla. 1973); Fire Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969).
Madison County v. Foxx, 636 So.2d 39, 49 (Fla. 1st DCA 1994). In Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977), the second district upheld the validity of a special assessment for garbage disposal. In Sarasota County v. Sarasota Church of Christ, 641 So.2d 900 (Fla. 2d DCA 1994), the second district recognized that special assessments were appropriate for funding fire and rescue services.[4] In the instant case, the trial judge found that solid waste disposal specially benefitted the improved residential property:
Providing for the proper disposal of solid waste generated on properties subject to the assessment clearly provides a special benefit within the meaning of Article VII, Section 6 of the Florida Constitution. As the County has made its legislative findings as to the existence of special benefits from disposal services, the courts should not substitute their judgment for those determinations.[5]
We find no error in the analysis.
We are also unaware of any constitutional prohibition which would preclude a special assessment based on a county or municipality's home rule power from being assessed throughout an entire taxing unit. In Hanna v. City of Palm Bay, 579 So.2d 320 (Fla. 5th DCA 1991), the fifth district held that a special assessment for road maintenance was not valid because the benefitted properties did not "receive a benefit which is different in type or degree from the community as a whole." We find Hanna inapplicable in the instant situation for several reasons.
The first reason is that the limitation placed by the court on special assessments was based upon statutory language contained in chapter 170. The assessments in Hanna were enacted pursuant to chapter 170, Florida Statutes. The assessment in the instant case is one enacted pursuant to the home rule authority of the county. Such an assessment is only subject to the limitations enumerated in City of Boca Raton v. State, supra. In addition, the residential property in the instant case which was subject to the assessment, received benefits which were different in degree and type from those received by other properties within the taxing unit. For instance, vacant land generates far less solid waste than improved property. Commercial properties are more easily serviced by commercial haulers who may be subjected to a tipping fee at the dump based on the volume produced.[6] Improved residential property may clearly be differentiated from other types of properties in reference to *516 solid waste generated. These benefits to the properties were identified in the adoption ordinances as well as the trial court's order. In Hanna, supra, the fifth district could not identify such a benefit. We, therefore, find Hanna inapplicable to the instant case, and find no error in the trial court's determination that the assessed property derived a special benefit.
In relation to the fair apportionment of benefits, the trial court stated as follows:
b. Fair Apportionment

The apportionment of the partial year solid waste disposal assessment was based upon the budgetary requirements for providing of solid waste disposal services and facilities from January 1, to September 30, 1993, to residential properties in the unincorporated area subject to the assessment. The amount of the assessment is based on the actual cost to provide disposal services and facilities to the properties subject to the assessment and is equally distributed among these units. No profit was included into [sic] the assessment.
The trial court, citing to Charlotte v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977), and Fire Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969), found that such a method for determining apportionment was valid. We concur with the trial court's statement of the law.
We also recognize that apportionment of benefits is a legislative function that should not be second guessed.
In City of Boca Raton v. State, 595 So.2d 25, 30 (Fla. 1992), the Supreme Court, in discussing the role of the court in analyzing the apportionment of a special assessment, stated as follows:
At the outset, we note that the City made specific findings that the improvements would constitute a special benefit to the subject property, that the benefits would exceed the amount of the assessments, and that the benefits would be in proportion to the assessments. The apportionment of benefits is a legislative function, and if reasonable persons may differ as to whether the land assessed was benefitted by the local improvement, the findings of the city officials must be sustained. Rosche v. City of Hollywood, 55 So.2d 909 (Fla. 1952).
In this case, the trial court correctly analyzed the apportionment issue when it stated,
Whether there are other methods of apportioning benefits which were available to the County is not the issue. No system of apprising benefits or assessing costs has yet been devised that is not open to some criticism and none have attained the ideal of exact equality. Meyer v. City of Oakland Park, 219 So.2d 417 (Fla. 1969). The issue is whether the County has made a legislative determination as to the method of apportioning benefit and whether such apportionment is reasonable. Clearly it is.
The documents submitted by appellant on the date of the hearing also do not provide a basis for finding disputed issues of material fact because these documents were neither timely nor properly presented. The procedures which govern a court's consideration of a motion for summary judgment are contained within rule 1.510, Florida Rules of Civil Procedure, as well as the specific information which may be reviewed by the court in determining whether a disputed material fact exists and the proper form of that information:
The motion shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall be served at least twenty days before the time fixed for the hearing. The adverse party may serve opposing affidavits by mailing the affidavits at least five days prior to the day of the hearing or by delivering the affidavits to the movant's attorney no later than 5:00 p.m. two business days prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 1.510(c), Fla.R.Civ.P. (emphasis added). The language of rule 1.510, Florida Rules of Civil Procedure, reflects a clear intent to *517 allow courts to consider only that information which has been either admitted by the parties (i.e., admissions, interrogatories, or answers) or which establishes the existence or nonexistence of material facts in dispute through affidavits and information which has been timely presented. The documents submitted by the appellants do not comport with this intent of the rule as they were not timely filed nor were they accompanied by an affidavit.
Appellants attempted to file, as an exhibit to their supplemental response to defendants' motion for summary judgment, various documents purportedly obtained through discovery. No accompanying affidavit was provided with those documents, and the only discussion concerning what they allegedly represented was by the attorney in her own memorandum. As such, submission of the documents was not in compliance with rule 1.510, Florida Rules of Civil Procedure.
This court has previously addressed the timing and form requirements of rule 1.510. In DeMesme v. Stephenson, 498 So.2d 673 (Fla. 1st DCA 1986), this court upheld the trial court's exclusion of two documents that failed to comply with the requirements of rule 1.510 in that they were not timely filed. The rule requires that any opposing affidavits to a motion for summary judgment be mailed at least five days prior to the scheduled hearing or be hand delivered to opposing counsel at least two days prior to the hearing. Consequently, the documents sought to be submitted by appellants at the hearing were not timely submitted. Rule 1.510, Fla.R.Civ.P.
Furthermore, the proposed documents in this case were not in a proper admissible form. This court in DeMesme excluded documents sought to be admitted upon a motion for summary judgment because they were not in the form of an affidavit as required by Florida Rule of Civil Procedure 1.510(e). Id. at 675. Florida Rule of Civil Procedure 1.510(e) states as follows:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

Id. (emphasis added). The last requirement, by its language, excludes any document from the record on a motion for summary judgment that is not one of the enumerated documents or is not a certified attachment to a proper affidavit. Nothing was presented which provides us with any context as to when they were prepared. These documents, standing by themselves, are insufficient to raise a material dispute concerning the legislative determination of the county.
We, thus, affirm the summary final judgment.
MICKLE, J., concurs.
BOOTH, J., dissenting with written opinion.
BOOTH, Judge, dissenting.
I must dissent because it appears that summary judgment was premature, leaving unresolved issues of fact. Discovery documents from the county were received by appellant on August 17, 1993.[1] A devastating storm struck the area the next day (August 18, 1993) and damaged appellant's law office. Due to the storm damage, the trial court granted appellant's motion for continuance of the summary judgment hearing (originally *518 scheduled for August 23, 1993) and rescheduled same for August 31, 1993.
At the August 31, 1993 summary judgment hearing, the trial court acknowledged that "I continued the hearing to give them an opportunity to prepare what they needed to prepare." Nonetheless, when appellant sought at the August 31 hearing to introduce the documents, the county objected, although it did not dispute that the documents were either from its discovery response or from public records. In offering the documents, Appellee explained:
This is the soonest we were able to analyze any of it [due to the storm damage and subsequent disruption]. I believe there's more that the Court should consider. We're not in a position to bring it to the Court's attention at this point, but these documents are ready to be brought to the Court's attention. The documents speak for themselves.
Appellant also offered an affidavit regarding the source of the documents. The trial court ultimately disallowed the evidence in its order entered several weeks after the hearing.
Affidavits filed by the county stated that there was no profit to the county from the proposed assessment. The excluded documents cast doubt on that statement, however, and tended to show that the assessment was not calculated to cover only the landfill service provided. In view of the confusion generated by the trial court's statements regarding its continuance of the summary judgment hearing, the nature of the discovery documents sought to be introduced, and the material bearing these documents have on this case, I believe the trial court abused its discretion by excluding the documents.
Even without the excluded documents, however, the record on summary judgment is sufficient to create genuine issues of material fact regarding (1) whether there is a special benefit to the assessed property owners; (2) whether the funds collected are limited to maintenance of the landfill for which the assessment is made; and (3) whether profit or excess collected from the assessment will go into the county general fund, or will be required to be reinvested in the landfill in question and/or returned to the assessed property owners.
The record before us contains appellees' response to an interrogatory question regarding benefit to the assessed property:
Among the benefits derived by properties subject to the Partial Year Solid Waste Disposal Assessment are the providing of the disposal of solid waste generated from such property, availability of facilities to properly and safely dispose of solid waste generated from such properties; providing for the closure and long-term monitoring of facilities which are necessary for and which provide for the disposal of solid waste generated from such properties; increase in the value of such properties; better service to the owners and occupants of such properties for the disposal of solid waste generated by such properties; and the enhancement of environmentally responsible use of such properties.
In a subsequent interrogatory answer, appellees further asserted:
The value of the [assessed] property is enhanced through the availability of solid waste disposal facilities and services to that property. The reduction in littering which results from the availability of disposal services also enhances the value of property.
However, the above-stated benefits to the assessed property owners are shared county-wide. Another of appellees' answers to interrogatories states that "[i]n addition to the special benefit derived by property owners subject to the Partial Year Solid Waste Disposal Assessment, less littering occurs from the availability of solid waste disposal facilities as well as a cleaner environment generally."
Although these county-wide benefits are generally shared by both assessed and nonassessed property owners, the up-front costs of maintaining the landfill in question are not shared. Owners of residential property in the unincorporated area of the county are required to pay the fixed assessment to maintain the landfill; however, the landfill so maintained continues to be available to all other county residents and commercial users, who can use the landfill at will by payment of *519 a "tipping fee", as stated in appellees' answers to interrogatories:
Following said effective date [for the assessment], a tipping fee is no longer charged for residents of the unincorporated areas of the County [subject to the assessment]. Pursuant to Solid Waste Division policy, if the vehicle in which the solid waste is carried to the Landfill bears a Clay County tag an inquiry concerning the source (by street name) of the solid waste is made (if the source is within the unincorporated area of the County, no tipping fee is charged, as explained hereinabove). If the vehicle does not bear a Clay County tag, or if the Solid Waste Division employee in his or her judgment deems it otherwise appropriate, the individual can be required to establish proof of residency by way of a drivers license, a voters registration card, or an electric bill or other document showing a Clay County address.
Furthermore, the record does not establish that the assessed property owners receive any new or enhanced service as a result of the assessment (such as garbage collection, for example); to the contrary, the assessed property owners must still take their garbage to the landfill, just as they always have, only now they must pay the mandatory set assessment rather than the variable "tipping fee." All other county residents and businesses are free to use the landfill or not, and need only pay a tipping fee if and when they use it. Thus, the majority's reliance on Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994), and Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977), is misplaced, in that those cases involved garbage collection, a service that directly inured to the assessed property. Foxx and Fiske stand for the general proposition that special assessments may be used to fund services as well as capital improvements; however, this court in Foxx held that summary judgment was not appropriate for resolution of the benefit issue, and Fiske is totally distinguishable as involving a sanitation district and a franchised garbage collection company that received all of the assessment funds with no profit to the county. The court in Fiske held that, although the garbage fee was denominated a "special assessment", the fee was, in reality, a service charge. 350 So.2d at 580 (citing Turner v. State ex rel. Gruver, 168 So.2d 192 (Fla. 3d DCA 1964)).
Genuine issues of material fact exist in the present case regarding whether the special assessment at issue provides any special benefit to the assessed property owners beyond the general benefit provided to all Clay County residents. Under the limited facts of record, there is no presumption of benefit to the assessed property owners; special benefit must be shown.[2]
The court in Sarasota County v. Sarasota Church of Christ, Inc., 641 So.2d 900 (Fla. 2d DCA 1994), rev. granted, 652 So.2d 817 (Fla. 1995), held that a special assessment for stormwater management was invalid. The assessment was sought to be imposed against various tax-exempt landowners, to wit, churches. The court upheld the assessment for fire and emergency services on the grounds that the churches' past practice of voluntarily paying estopped them from objecting to the fire and emergency service assessment. However, as to the stormwater assessment, the court held:
Stormwater management services are, without question, both necessary and essential. However, such services [as planned and funded pursuant to Sarasota County Ordinance No. 89-117] benefit the community as a whole and provide no direct benefit, special benefit, increase in market value or proportionate benefit regarding the amount paid by any particular land owner. No evidence was presented of any direct or special benefit to any of the church properties involved in this lawsuit. Accordingly, these stormwater management services do not meet the definition of a special assessment. It is interesting to *520 view Defendant's Exhibit B which confirms stormwater management revenues for fiscal 1991 exceeded expenditures by 50% (e.g., $2,000,000.00).
If services are allowed to routinely become special assessments then potentially the exemption of Churches from taxation will be largely illusory. For example, a review of Plaintiff's ... [evidence] reveal[s] that the significant majority of items presently comprising the ad valorem tax base are services by nature. A domino effect could ensue if special assessments are continually expanded to include generic services... .
Id. at 902-03.
The solid waste landfill service here is akin to the stormwater management system in the Sarasota Church case, a service held to be of general benefit but not sufficient special benefit to support an assessment. Further, this court has held that the issue of benefit supporting a special assessment is a mixed question of law and fact and should not be resolved by summary judgment. In Foxx, supra, 636 So.2d at 49, this court held:
It is our view that the issue in this case  whether these alleged special assessments confer special benefits upon the property assessed  presents mixed questions of law and fact. See, e.g., South Trail Fire Control Dist., Sarasota County v. State, 273 So.2d 380, 383 (Fla. 1973). Because this issue was, in part, a question of fact, and the pleadings, depositions on file, and the affidavits, do not demonstrate an absence of material issues of fact, the trial court's determination that these charges were not special assessments was premature.
In Hanna v. City of Palm Bay, 579 So.2d 320, 323 (Fla. 5th DCA 1991), the court struck down a special assessment for street improvements against abutting property owners, holding:
Under the guise of special assessments, therefore, the City of Palm Bay merely shifted its responsibility for the maintenance of streets onto individual property owners rather than spreading the cost of maintenance over the community at large by use of ad valorem tax revenues, utility tax revenues, fees from occupational licenses, franchise fees, and other available sources of revenue that contributed to the general fund of the City. By doing so, the City completely ignored the express limitation on special assessments that the benefit conferred upon the homeowners be "different in type or degree form the benefits conferred to the community as a whole."
Several other issues of material fact appear in the record which preclude summary judgment in this case. Appellees responded to an interrogatory that all funds from the assessment are deposited as revenue into what appears to be a general county solid waste fund, for expenditure in accordance with the budget thereof. This fund is not expressly limited to maintenance of the landfill for which the assessment is made.
Appellees' answers to interrogatories provide for shortfalls in revenue collected but conspicuously lack any provision addressing what will be done with excess revenue from the assessment, should any exist. In Fiske, supra, 350 So.2d at 581, the court was able to uphold a special assessment for garbage disposal because the entire amount of the fee was paid to the garbage company and no profit was made by the county; this was the critical point, as the court held:
Finally, the trial court's fourth reason for voiding the ordinance, i.e., because it does not require that the amount of the assessment equal or approximate the benefit, is also fatally defective. .. . [T]he total of the charges collected for the total services is paid out to the franchised disposal company and no profit is made by the county (thus, incidentally, there is no improper "tax" aspect inuring to the benefit of the county at large). [Emphasis added.]
A special assessment imposed by a legislative body must be limited to the amount necessary to efficiently accomplish that purpose; the proceeds of a special assessment cannot be used for any purpose other than payment for the particular improvement, and in no case may the assessment be in excess of the benefit conferred on the land, nor may it exceed the cost of the improvement and necessary *521 incidental expenses. 48 Fla.Jur.2d Special Assessments § 22 (1984).
The instant case goes further than any to date in crossing the boundary between assessment and tax. I would diligently uphold the requirements for a valid special assessment and require proof that all revenues collected are for services to the assessed property and not general revenue to the county, and that the benefits are particular to the property assessed and not county-wide. Otherwise, selected groups and areas can be singled out and subjected to "assessment" without regard to the exemptions and millage caps, and a tax masquerading as an assessment will become a proverbial monster, escaping all bonds and undermining the legal limitations on taxation.
NOTES
[1] The summary judgment hearing was scheduled for August 23, 1993, but was continued for eight days on plaintiff's motion because of storm damage to the offices of plaintiff's counsel.
[2] It would also follow that such assessment, if valid, would not constitute a tax and, thus, would not be subject to the millage cap contained in art. VII, § 9 of the Florida Constitution.
[3] Thus, special assessments, unlike user fees, do not have to be voluntary. It would appear that the requirements for a valid special assessments vary from the requirements for a valid user fee identified in State of Florida v. City of Port Orange, 650 So.2d 1 (Fla. 1994).
[4] The second district, however, ruled that stormwater management services could not be appropriately funded by special assessments because they provided community-wide benefit and had been previously funded through taxes. We do not see any basis for determining that stormwater management services can never be funded through special assessments, or that services which have been previously funded through taxes can never be funded by special assessment. In fact, the court never adequately explains what the difference is between stormwater assessments and the fire and rescue services assessment which was upheld. Nor do they distinguish the assessment for garbage disposal approved in Fiske. We can only assume that the decision was based on the court's observation that no evidence was presented of any direct or special benefit to the properties involved.
[5] The legislative findings referred to by the trial judge were contained in the assessment resolution as follows: (A) The parcels of Residential Property described in the Solid Waste Disposal Assessment Roll, which is hereby approved, are hereby found to be specially benefited by the provision of the solid waste disposal and recycling facilities and services described in the Partial Year Rate Resolution, in the amount of the Partial Year Solid Waste Disposal Assessment set forth in the Solid Waste Disposal Assessment Roll, a copy of which is present at this meeting and is incorporated herein by reference. The benefits provided to affected lands include by way of example and not limitation, the availability of facilities to properly and safely disposes of solid waste generated on improved residential lands, closure and the long term monitoring of the facilities, a potential increase in value to improved residential lands, better service to owners and tenants, and the enhancement of environmentally responsible use and enjoyment of residential land.
[6] Subjecting individual property owners to tipping fees may result in illegal dumping; therefore, assessment may be the only practical way to collect from residential property.
[1] The documents at issue are (1) draft of Clay County's assessment calculation, as well as a letter and memoranda regarding same; (2) Clay County's 1992-93 revenue, expense, and disposal fee projections, along with related documents; (3) Clay County's 1992-93 estimated expenses and revenue; (4) 1992-93 assessment; (5) letter from the Managing Consultant of Public Financial Management to the Board of County Commissioners summarizing the principle advantages and disadvantages of the assessment; (6) newspaper affidavit that a notice of public hearing regarding the assessment was published on November 19, 1992, and a list of the County's 1992 holiday schedule (R. 447-64).
[2] Cf. 48 Fla.Jur.2d Special Assessments § 20 (1984), which provides that "[w]hen a particular improvement by its nature is designed essentially to afford special or peculiar benefits to abutting or other property within the protective proximity of the improvement, it is presumed that special or peculiar benefits may or will accrue to the property so situated, and the special assessments are permitted without an express, specific finding of benefits as to each parcel sought to be assessed." (Emphasis added.)