# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

SEPTEMBER TERM, 1877.

---

THE VILLAGE OF HYDE PARK

*v.*

GEORGE INGALLS *et al.*

87    11|
e200 ¹547|

1. TAXES—*municipal corporations may levy tax to pay expenses of collecting and to meet deficiencies.* A municipal corporation may levy a tax to pay the expense of collection, and to meet deficiencies likely to occur, over and above the sum actually required to pay its debts, etc.; and when this is done by the corporate authorities, in the fair and honest exercise of the discretion vested in them, the courts will not interfere.

2. The duty of municipal corporations to pay their debts when due, implies the existence of a power to bring the money necessary for the purpose into their treasuries at the proper time; and to do this, deficiencies and expenses may be anticipated and provided for in the levy of taxes.

3. The village trustees of Hyde Park are lawfully vested with all the legislative authority of the corporation, and they alone are authorized to levy taxes for the payment of the corporate debts, and are vested with discretion in the levy of a tax for any given purpose, to the extent that legislative authority in general may exercise the same.

APPEAL from the County Court of Cook county; the Hon. MARTIN R. M. WALLACE, Judge, presiding.

This was an application, by appellant, against appellees and others, for judgment for delinquent taxes.

The objectors introduced in evidence the annual appropriation bill and tax levy of the village, together with the certificate of publication, as follows:

" *Be it ordained by the President and Board of Trustees of the Village of Hyde Park:* SECTION 1.   That the following sums of money be and the same are hereby appropriated to defray all necessary expenses and liabilities of the village of Hyde Park, for the several objects and purposes hereinafter specified, for the fiscal year commencing on the third Tuesday in July, A. D. 1876, the same to be known as the Annual Appropriation Bill."

The following items, only, are material in the present case:

"*For interest and sinking fund:*

For bonds issued under ordinance passed

| | |
|---|---|
| September 6, A. D. 1873, - - - | $7,603 16 |
| March 21, A. D. 1874, - - - | 7,147 50 |
| March 15, A. D. 1875, - - - - | 59,562 50 |
| January 11, A. D. 1876, - - - | 1,263 16 |

For amount necessary to pay the expense of collection and deficiencies arising in the collection of the last four foregoing items, - - - - - - - - 22,672 68 "

The court held the last item void, and refused to give judgment therefor; and this appeal is brought to procure a reversal of that judgment.

Mr. CONSIDER H. WILLETT, for the appellant.

Messrs. HARRISON & WHITEHEAD, for the appellees.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The rate per cent of taxation here levied is not in excess of the limitation of the constitution, or of any provision of the

municipal charter. The only question is, whether the *purpose* of the item in controversy is lawful.

The village trustees are lawfully vested with all the legislative authority of the corporation, and they alone are authorized to levy taxes for the payment of the corporate debts. Const. 1870, art. 9, sec. 10. They exercise an undeniable authority to provide for the payment of the corporate debts, in such manner as the holders of the indebtedness and they may agree upon. *City of Galena* v. *Corwith,* 48 Ill. 423; *City of Quincy* v. *Warfield,* 25 id. 317. Necessarily, therefore, to the extent that the legislative authority, in general, may exercise discretion in fixing the amount of a tax levy for any given purpose, they are invested with such discretion.

It is the duty of municipalities to pay their debts when due, according to the terms and obligations of their agreements; and this, obviously, imports the existence of a power to bring the money into the treasury—not in part, but the whole—at the proper time.

Theoretically, no tax should be collected, however small the amount, beyond the ratable proportion of the individual from whom it is collected. Every particle of property within the municipality should bear its equal proportion in the discharge of every pecuniary municipal obligation—no more and no less; but this is theoretical only. Absolute perfection is no more attainable in the levy and collection of taxes than in other human affairs; and courts have never held taxes invalid because of errors and irregularities in their levy and collection which ordinary human sagacity, prudence, skill and fidelity in the discharge of duty could not avoid. It is hardly probable that, in any instance, was the *entire* levy of a State, county, city or village tax collected when it was due and should have been in the treasury.

It is within general observation that some per cent of personal property assessed for taxation perishes, or is destroyed or removed beyond the possibility of seizure, before the tax warrant can be enforced by the collector; and that some per

cent of the owners of such property escapes the payment of taxation thereon by reason of insolvency or by absconding, or, it may be, from other causes. Quite frequently, also, through the mistakes of officers charged with extending the taxes and enforcing collections, some amount is lost to the revenue. So, courts, in dealing practically with the question, must recognize the fact that the levy of a given sum will not necessarily, or even ordinarily, produce that sum to the treasury. They must recognize the probability of a deficiency, which, in amount, will vary in accordance with circumstances.

It belongs to the legislative department to levy the tax. Its duty, as we conceive, is, in view of the probability of a deficiency in collection, not merely to levy the amount of a given debt, but to levy a rate per cent which, in view of all the circumstances likely to affect the collection, shall be deemed sufficient to produce to the treasury the amount of the debt.

If courts may, as we think they should, recognize the probability of deficiencies in collection, (from whatever causes they may occur,) then it would seem plain they must recognize the power and duty in the legislative department of the municipality to anticipate and provide against the probable deficiencies, so as to have the money required in the treasury, at the proper time, to meet the corporate debts. If in this we are not in error, the legislative department necessarily exercises a discretion in this regard which courts will not undertake to control, merely because of a disagreement in opinion. This discretion, it is true, can not be exercised arbitrarily or capriciously—it must be the result of a rational and honest judgment, in view of all the circumstances that might, ordinarily, be presumed to affect the collection; but when thus exercised, it is not the subject of legal supervision.

Should it be held the debt limits the legislative authority of the municipality to the mere ministerial duty of ascertaining the rate per cent extended on the assessed valuation to produce the amount of debt, it is evident that creditors might be forced to wait for years before they could obtain their due

—and this even though they should have the aid of the court by *mandamus* to enforce payment; for, the deficiency of this year would have to be again extended on the assessment of next year, and the deficiency of that year again on the assessment of the year following, and so on.   It is too apparent to justify comment that this, instead of benefiting tax payers, would but increase their burdens by adding to the costs of collection.   A surplus may, undoubtedly, be brought into the treasury by this mode of levying—but it will not be lost.   It will belong to the corporation, and may be used in extinguishing other debts or in the payment of current expenses, and thereby lighten future taxation.

How much of the contested item is for the purpose of paying the expenses of collection, does not appear.   Whatever it may be, there can not be the slightest objection to it; for no one can pretend that the expenses of levying and collecting taxes are not corporate objects.   And, in the absence of evidence showing that the trustees have clearly abused their discretion in the amount levied to supply the anticipated deficiency, we know of no reason why even a court of equity, much less a court of law, should interfere with and nullify their determination.

The judgment is reversed and the cause remanded.

*Judgment reversed.*