A. M. KLEMM, *Plaintiff in Error,* v. W. M. DAVENPORT, as Mayor, and R. W. SIMS, C. E. TABOR, P. SHORT, G. A. MAVIS, and S. P. FRENCH, as Members of the City Council as the Governing Authorities of the City of Clermont, County of Lake, State of Florida, *Defendants in Error.*

En Banc.

Opinion filed August 5, 1930.

628

*Touchton, Mitchell & Crittenden,* and *W. H. Poe,* for Plaintiff in Error;

*George F. Westbrook* and *Gaines & Futch,* for Defendants in Error;

*Giles J. Patterson, L'Engle & Shands, F. P. Fleming* and *Thomson, Wood & Hoffman,* of New York, as *Amici Curiae.*

TERRELL, C. J.—The City of Clermont paved certain of its streets and assessed the entire cost against the abutting property, said cost being spread over ten equal annual installments. To provide immediate funds to meet the expense of this paving, the city issued its bonds as authorized by Chapter 9298, Laws of Florida, Acts of 1923 (Section 3022 *et seq.*, Comp. Gen. Laws of 1927). Said bonds purport on their face to be general obligations of the city, were validated by decree of the Circuit Court of Lake county and bear certificate of that fact. Plaintiff in error is the owner of five thousand dollars of these bonds which matured January first, 1929, both principal and interest from date of maturity remaining unpaid. The record is silent as to whether this default resulted from delinquencies in the payment of special assessments or whether a large portion of the abutting owners took advantage of the installment provision. At any rate the relator below, plaintiff in error, instituted her suit in mandamus in October, 1929, to require the city council to levy and collect a general ad valorem tax to pay the amount of principal and interest due on her bonds. A motion to quash the alternative writ was granted and final judgment was entered, to which writ of error was taken.

The primary question brought here for our determination is whether or not an ad valorem tax can be imposed

and collected on all the property in the City of Clermont to pay the principal and interest on the bonds of plaintiff in error, special assessments having already been imposed on the property benefited for that purpose. Defendants in error contend that such an imposition is void as double taxation and rest their case on that contention.

A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity and may be determined legislatively or judically. Cooley on Taxation (3rd Ed.), Vol. 2, 1153. Words and Phrases (second series), Vol. 4, page 625, and cases there cited. See also Whitney v. Hillsborough County, 127 So. R. 486; A. C. L. v. Lakeland, 115 So. R., text 683.

The imposition of an ad valorem tax twice against the same person or property for the same purpose because of such ownership would be double taxation in violation of law but both impositions must be taxes as distinguished from other impositions. If one is a tax and the other a license fee or special assessment double taxation is not accomplished. Cooley on Taxation 229, Hamilton, Taxation by Special Assessment, Section 21. It is also well settled that two taxes for the same purpose, one general and

the ·other special, are not obnoxious as double taxation when all taxable property in the district is subject to both taxes. Jackson v. Neff, 64 Fla. 326, 60 So. R. 350; Edwards v. Ocala, 58 Fla. 217, 50 So. R. 421; Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47; Hiers v. Mitchell, 95 Fla. 345, 116 So. R. 81; Cooley on Taxation (4th Ed.) 223.

It may with propriety be said in this connection that our Constitution does not prohibit double taxation. Addressing itself to that point in Jackson v. Neff, *supra*, this Court said:

"The power of the legislature is unrestricted to impose ad valorem taxes by a duly enacted statute where the limitations imposed by the State Constitution as to uniform and equal rates and just valuation are observed, and the organic provisions as to due process and equal protection of the laws are not violated. Even double taxation may not violate constitutional limitations where uniformity of rates, just valuation and due process are observed and no unjust discriminations are imposed so as to preserve the organic right to equal protection of the laws."

Aside from the question of double taxation the principle is well established in this country that in addition to his proportion of a laid tax a taxpayer may be required to pay an additional amount to make up deficiencies caused by the neglect or inability of other taxpayers to pay their assessments and that such additional impositions do not violate constitutional inhibitions against double taxation nor requirements of equality and uniformity nor do they amount to the taking of one's property, without due process of law. The following cases discuss and uphold this principle. Wycliff v. City of Greenville, 170 Ky. 528, 186 So. W. R. 476, Trigg v. Henderson Cotton Mills, 177 Ky. 613, 197 So. W. R. 1074, Colby v. City of Medford, 85 Ore. 485, 167

Pac. R. 487, United States v. Fort Scott, 99 U. S. 152, 25 L. Ed. 348; Village of Hyde Park v. Ingalls, 87 Ill. 11; City of Wilmington v. Cronly, 122 N. C. 383, 30 So. E. R. 9; County of Redwood v. Wynona & St. Peter Land Co., 40 Minn. 512, 41 N. W. R. 465; 42 N. W. R. 473; Anderson v. Ritterbusch, 22 Okla. 761, 98 Pac. R. 1002; State ex rel. Frazer v. Holt County Court, 135 Mo. 533, 37 So. W. R. 521, the last enumerated case related to a drainage tax wherein the Court said:

> "All the lands benefited can be retaxed whenever it appears that previous assessments are insufficient. Even if the assessment in the first instance was sufficient, if collected, to pay the cash in full for said improvements, yet if, after the allowance of a reasonable time for the collection from delinquents, a deficiency exists, and the legal remedies have been exhausted for the collection of taxes, or if the assessments made have been abandoned, or remain uncollected by the authorities having the matter of the collection in charge. the writ should be granted ordering an additional assessment."

The following cases contain interesting discussions upholding legislative acts imposing additional taxes to supplement deficits arising from failure to collect those imposed in the first instance, Norris v. Montezuma Valley Irrigation Dist., 248 Fed. R. 369; State ex rel. Souter v. Common Council of Madison, 15 Wis. 30; In Re Beechwood Ave., 194 Pa. St. 86, 45 Atl. R. 127; Cosman v. Chestnut Valley Irrigation Dist., 74 Mont. 111, 238 Pac. R. 879; State ex rel. Clancy v. Columbia Irrigation Dist., 121 Wash. 79, 208 Pac. R. 27; Nelson v. Board of Com'rs of Davis County, 62 Utah 218, 218 Pac. R. 952, and Alexander v. Bailey, 108 Nebr. 717, 189 N. W. R. 365. In Norris v. Montezuma Valley Irrigation District, supra, the Court said:

"Such provisions are not violated, when, after the lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, an additional levy is made upon all the property in the district because of the failure of some of the taxpayers to pay their portions of the first levy."

In the light of the foregoing authorities it seems settled law in this country that an ad valorem tax and special assessment though cognate in immaterial respects are inherently different in their controlling aspects, that both may be imposed on the same property at the same time and that in addition to the primary imposition in either instance the taxpayer may be required to pay an additional amount to make up deficiencies caused by the neglect or inability of other taxpayers to pay their assessments and that such requirements would not violate constitutional inhibitions against double taxation, the requirement of equality and uniformity, nor do they amount to taking one's property without due process.

But it becomes necessary in this connection that we examine briefly the terms of Chapter 9298, Acts of 1923 (Sec. 3033 *et seq.*, Comp. Gen. Laws of 1927) the assault on which this case is grounded. This act was construed by us in Walters v. City of Tampa, 88 Fla. 117, 101 So. R. 227, and in Atlantic Coast Line Railroad Company v. City of Lakeland, 94 Fla. 347, 115 So. R. 669 and was pronounced valid as to due process and equal protection as provided in the fourteenth amendment to the Federal Constitution and as to the provisions of Sections One and Twelve of the Declaration of Rights. Nothing whatever is presented here to warrant a change or modification of the view as expressed in those cases.

It is not contended that the bonds in this litigation are invalid. In fact their validity appears admitted but the

contention is that so much of Chapter 9298, Acts of 1923, as makes them general obligations of the city and imposes an ad valorem tax on all property in the city to pay them is void because in conflict with Section Twelve of the Bill of Rights, Section Eight, Article Eight, and Sections One, Three and Five of Article Nine, Constitution of Florida.

That part of the statute challenged is as follows:

"Sec. 11. After the equalization, approval and confirmation of the levying of special assessments for street improvements as hereinbefore provided by Section 8 of this Act, and as soon as a contract for said street improvement has been finally let, the governing authority of the municipality may, by resolution, issue bonds, pledging the full faith and credit of said municipality to an amount not exceeding seventy percent of the proportionate part of the cost of said street improvements to be paid by special assessment, and the estimated cost of said street improvements as stated in the resolution provided by Section 3 of this Act shall be used as a basis of calculation in determining seventy per cent of the proportionate part of the cost of said street improvement to be paid by special assessment; such bonds shall be general obligations of the municipality issuing the same, and if special assessments be not imposed and collected in respect of the improvements in season to pay the principal and interest of said bonds the governing authority of the municipality shall levy and collect on all taxable property in the municipality a tax sufficient to pay such principal and interest as the same respectively become due and payable."

In view of the fact that so many and various factors and combinations of elements enter into and control the disposition of cases affecting the liability of a municipality

for local improvement we think the ultimate test of the power must be extracted from the statute or contract authorizing the improvement. An examination of the statute as above quoted discloses that the city is the sole and only primary obligor to the bondholder, that there is no ground whatever to assume that the special assessments imposed constitute the only fund for the discharge of the said bonds and that the bondholder is not concerned with the source or means exercised by the city for raising funds to pay its bonds that being a matter between the city and its taxpayers. There are instances in which valid bonds cannot be paid because of restrictions on the taxing power or because of neglect to exercise or extend the power and in some states municipalities are expressly forbidden to assume the payment of bonds based on special assessments but here we have an express command laid on the municipality to levy and collect on all taxable property in the city a tax sufficient to pay principal and interest on said bonds as they become due and payable if special assessments be not imposed and collected to pay them.

The Act by its terms is limited to cities, towns, and muncipalities and provides a supplemental, additional, and alternative method for making local improvements. It embraces plenary power for issuing and selling bonds ''without reference to another act,'' vesting them with all the qualities of negotiable paper under the law merchant and pronounces them incontestible in the hand of *bona fide* purchasers and holders for value. It is also provided that bonds may be issued as soon as the contract for the improvement is let, said bonds to run over a period of years to be determined by the city while the special assessments may be distributed over a period of ten years and may be paid when assessed or in ten equal annual installments at the election of the property owner. In this situation we cannot escape the conclusion that the bonds brought in

question were direct binding obligations of the city that the city had power to issue them and that plaintiff in error had a right to require the collection of an ad valorem tax to pay them, no special assessment being available to do so.

The law is well settled in this country that as between the bondholders and the municipality the bondholders may enforce payment of his bonds as general obligations of the municipality by an ad valorem tax on all property therein while as between the municipality and the tax payer the law allows the municipality to place the ultimate burden on those specially benefited. United States v. Fort Scott, 99 U. S. 152, 25 Law Ed. 348; Mutual Benefit Insurance Company v. City of Elizabeth, 42 N. J. L. 235, Avery v. Job, 25 Oregon 512, 36 Pac. R. 293, United States v. County Court of Clark County, 96 U. S. 211, 24 L. Ed. 628, United States ex rel. Masslick v. Saunders, 124 Fed. R. 24 Rialto Irrigation District v. Stowell, 246 Fed. R. 294.

It may be that the Act brought in question was passed under the afflatus of unusual conditions and that by reason of the liberal exercise of its provisions and the blasted hopes of anticipated profits therefrom, to now enforce an ad valorem tax to pay the bonds will result in hardships and inequalities. In fact it is asserted by the defendants in error that it will amount to confiscation, the destruction of real estate values in many communities and the making it impossible to collect taxes thereon. This contention would have been pertinent and should have received serious consideration if it had been urged in resistance to the issuance of the bonds but when they have been issued, validated, and sold and the proceeds applied to pave the streets of the city and to enhance the value of the property of its citizens and have contributed to its general betterment, the bonds matured and pay time has arrived, such a contention is ill timed and offers no bar for a court of justice to de-

cline to administer a valid law. No system of taxation has ever been devised that was free from its burdens and inequalities. It is common knowledge that the diligent pay the assessments imposed on them while others abandon their property and "dodge" their responsibility to government and society, though eagerly accepting its protection and benefits. Such conduct is inexcusable and must ultimately add to the burden of the diligent but it can furnish no excuse for the refusal of the city to comply with its contract with those who in good faith invested their money in its securities. A "promise to pay" is in no different situation when executed by an individual than when executed by a governmental entity. It is a serious matter, is not subject to the vicissitudes of fortune and should be as scrupulously observed in the performance, in the one instance as in the other. In times of stress and adversity, individuals are often required to toil through years and exercise the most rigid self-denial and economy to "pay," even though the business engaged in proved a failure. A like course of conduct is no less incumbent on a governmental entity. The very foundation of our social and economic structure is confidence, and while the demands of government on the tax payers are burdensome it is also true that society in turn is making unusual demands on the government. If a "promise to pay" is no more than a "scrap of paper," or like the apples of Sodom, fair to look on, but turn to smoke and ashes when plucked or matured, then government must cease to function and confidence becomes a mere tradition and is no longer the rock on which human relations under our form of government must rest.

Whether the terms of Chapter 9298 Acts of 1923 are applied in their strictest and most exact sense or whether given a looser construction, we find no constitutional in-

validity in its provisions making bonds issued thereunder general obligations of the city and imposing an ad valorem tax to pay them if special assessments be not imposed and collected for that purpose. The burden may fall heavily on the diligent but it's the way pointed out by the law and the courts cannot avert it. County Commissioners v. King, 13 Fla. 451. The petitioner or relator was therefore entitled to the writ prayed for.

This being our conclusion the question of whether or not defendants in error are in a position to challenge the constitutionality of Chapter 9298 Acts of 1923 becomes unimportant and is not decided.

The judgment of the Circuit Court of Lake County must and is hereby reversed.

Reversed.

WHITFIELD, C. J., ELLIS, STRUM, BROWN and BUFORD, J. J., concur.

WHITFIELD, J. (concurring); While the statute, Chapter 9298, Acts of 1923, provides that the authorized special assessments "shall constitute a fund for the payment of the principal and interest of the bonds," it also makes the bonds duly issued under the act "general obligations of the municipality," and expressly provides that "in the event there be a failure to collect and receive the said special assessments in season to pay the principal and interest of said bonds, the municipality shall levy and collect on all taxable property in said municipality a tax sufficient to pay such principal and interest as the same respectively become due and payable."

The alternative writ alleges that the government authority of the municipality "have failed to collect the special

assessments and constitute said assessments as a special fund for the payment of'' the bonds in controversy, and have failed to levy and collect taxes for paying the bonds, and have not paid the ''bonds, or interest thereon, since January 1, 1929.'' These allegations are by the motion to quash, admitted to be true. There having been ''a failure to collect and receive the said special assessments in season to pay the'' bonds, the statute provides that ''the municipality shall levy and collect'' a tax to pay the bonds. This statutory duty may be enforced by mandamus in the absence of another appropriate and adequate remedy, if the statutory provision is not invalid. The obligation of the municipality under the statute, is direct and general to pay the bonds duly issued for the street improvements considered as an entire project, and the tax levy has reference to such improvements as a municipal purpose, considered as a whole and not with reference to property specially assessed for benefits to its value or use. The mere failure to collect special assessments, which necessitates a tax levy, does not unlawfully impose double taxation on those who pay their special assessments, since every piece of property specially assessed is liable for the amount legally assessed against it and such liability may be enforced. Inadequacy in value of property assessed to pay the assessment levied against it when it is sought to be enforced, does not render the statute invalid or unlawfully impose double taxation. Special assessments have reference to special benefits in added value to particular pieces of property, while municipal taxation has reference to municipal purposes that are beneficial to the municipality as a whole. The street improvements are beneficial generally to the city as well as specially to the owners of property that is specially assessed. Taxes are levied for one and special assessments for the other.

No question is presented here of the liability of the "abutting, adjoining, contiguous, or other specially benefitted property" or its owners, to the city for special assessments legally levied "in proportion to the benefits to be derived" from the street improvements. Nor is any question presented as to the rights of owners of specially benefited property who may have paid the special assessments when others have not paid. The properties are severally liable for valid assessments against them; and if the amounts levied upon the several pieces of property cannot be realized by subjecting the property to the lien of the special assessments, the law is not responsible therefor.

There may be cases where the entire proper cost of a street improvement may legally be assessed against "abutting, adjoining, contiguous or other specially benefited property," "in proportion to the benefits to be derived therefrom," therefore the statutory provision authorizing such special assessments does not violate organic law. Whether the constitution is violated by erroneously applying the statute in making assessments "for the payment of all or any part of the cost of any such street improvement," may be determined in appropriate proceedings in each case as it arises. In providing for the levy and collection of special assessments to "constitute a fund for the payment" of the bonds authorized to be issued for street improvements, with an alternative provision that upon "failure" to collect the special assessment "in season to pay the" bonds, "the municipality shall levy and collect on all taxable property in said municipality a tax sufficient to pay" the bonds as they "become due and payable," the *statute* does not illegally impose double taxation upon property that is specially assessed for benefits derived from

street improvements. When special assessments are collected their proper application may be enforced.

The alternative writ alleges "a failure to collect" "special assessments in season to pay the" bonds held by the relator that are by the statute expressly made "general obligations of the municipality," and consequently shows a duty of the governing authority of the municipality under the express terms of the statute, to levy a tax to pay the bonds of the municipality issued under the statute; and the alternative writ also shows a right in the relator to have the statutory duty enforced by mandamus, the pertinent statutory provisions not being shown to be invalid and an unlawful application of the statute not appearing.

TERRELL, C. J., and ELLIS, STRUM, BROWN and BUFORD, J. J., concur.