693 So.2d 945 (1997)
Lizzie HARRIS, et al., Petitioners,
v.
Dale WILSON, et al., etc., Respondents.
No. 86210.
Supreme Court of Florida.
March 20, 1997.
Rehearing Denied April 25, 1997.
Gloria A. Einstein of Jacksonville Area Legal Aid, Inc., Orange Park, for Petitioners.
Robert L. Nabors, Gregory T. Stewart and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee; and Mark H. Scruby, Clay County Attorney, Green Cove Springs, for Respondents.
Larry E. Levy of the Levy Law Firm, Tallahassee, for Quinton Dryden, Amicus Curiae.
April Carrie Charney, Chair, Consumer Law Work Group, Sarasota, for Florida Legal Services, Inc., Amicus Curiae.
*946 Harry Morrison, Jr., General Counsel and Kraig A. Conn, Assistant General Counsel, Tallahassee, on behalf of the Florida League of Cities, Inc.; William J. Roberts, General Counsel, Tallahassee, on behalf of the Florida Association of Counties; and Herbert W.A. Thiele, President, Tallahassee, on behalf of the Florida Association of County Attorneys, Amici Curiae.
OVERTON, Justice.
We have for review Harris v. Wilson, 656 So.2d 512 (Fla. 1st DCA 1995), in which the district court affirmed the trial court's validation of a special assessment for solid waste disposal. We accepted jurisdiction because of direct conflict with the Second District Court of Appeal's opinion in Sarasota County v. Sarasota Church of Christ, Inc., 641 So.2d 900 (Fla. 2d DCA 1994), which was quashed by this Court in Sarasota County v. Sarasota Church of Christ, Inc., 667 So.2d 180 (Fla. 1995) (Sarasota County). Consistent with our opinion in Sarasota County, we approve the district court's decision in the instant case.
In this case, homeowners of Clay County challenged a special assessment imposed to finance the maintenance of solid waste facilities. The trial court granted summary judgment in favor of the County. On appeal, the district court set forth the pertinent facts as follows:
In 1992, Clay County enacted an ordinance imposing a partial year special assessment (ordinance 93-26) applicable only to residential properties in the unincorporated areas of the county for the maintenance of county solid waste facilities. The assessment was for $63 per residential dwelling unit. Commercial properties and undeveloped properties were not subject to the assessment. Appellants are homeowners subject to the assessment.
Appellants brought two separate actions (which were later consolidated), challenging the assessment. The county filed a motion for summary judgment. In support of the motion, the county filed an affidavit from the interim county manager (formerly solid waste director), and an affidavit of a consultant who assisted in the preparation of the partial solid waste disposal assessment for the county. The affidavits outlined the assessment adoption process and in addition, alleged that the amount of the assessment was apportioned to the properties subject to the assessment in an amount equal to or less than the benefit received by such properties. The affidavits further provided (1) that the cost of providing for the processing and disposal of solid waste from properties located within the municipalities and for commercial and other nonresidential properties within the unincorporated area are collected through tipping fees at the disposal site, (2) that the tipping fees imposed are equal to the cost of the processing and disposal of the solid waste generated from such properties, and (3) that the determination not to impose the partial year solid waste disposal assessment upon commercial properties in the unincorporated area is based upon the varying production of solid waste generated from commercial properties.
The trial court also had before it the ordinances adopting the assessment, which made specific findings as to (1) the rationale for not imposing the partial year solid waste disposal assessment within the municipal boundaries, and (2) how the residential properties subject to the partial year solid waste disposal assessment were benefitted by the processing and disposal of the solid waste generated from their properties. Further, the board expressly made various findings of benefit in the Final Assessment Resolution. These included the availability of solid waste disposal facilities to properly and safely dispose of solid waste generated on improved residential lands, closure and long-term monitoring of the facilities, a potential increase in value to improved residential lands, service to owners and tenants, and the enhancement of environmentally responsible use and enjoyment of residential land.
On August 31, 1993, the date of the summary judgment hearing, plaintiffs filed a supplemental response to defendant's motion for summary judgment with attached *947 copies of documents concerning the alleged process of calculating the assessment. While the documents had been provided by the county in response to a request to produce, no affidavit was filed authenticating the documents, nor was any backup provided concerning the context in which the documents had been produced. The trial court refused to admit the documents, and granted final summary judgment in favor of the county.
Harris, 656 So.2d at 513-14 (footnote omitted).
The district court held that this special assessment could be levied throughout an entire taxing unit, that a special assessment was an appropriate mechanism for funding solid waste services, and that sufficient uncontroverted evidence was presented in this case to reflect that the assessment was properly apportioned.
Although the district court's opinion in this case was rendered before our opinion in Sarasota County, we note that the district court resolved the issues in this case consistent with our opinion. In Sarasota County, we determined that (1) a special assessment can be levied throughout a community as a whole so long as the assessment provides a special benefit to the properties assessed and the assessment is properly apportioned; (2) an assessment can be for services even if levied against homestead property; (3) a previous method of funding for the services (such as the tax in Sarasota County or the tipping fees previously collected in this case) does not preclude the imposition of an assessment; and (4) questions of special benefit and fair apportionment are questions for the legislative body imposing the assessment and will not be overturned absent a finding of arbitrariness. Having previously resolved these issues in Sarasota County, in this case we need only address the narrow question of whether the County was arbitrary in its findings regarding the questions of special benefit and fair apportionment. We agree with the district court's conclusion that the County's findings were not arbitrary.[1]
We note that Clay County stated in the ordinances and resolution adopting the assessment that the properties subject to the assessment would be specially benefitted by the assessment. Specifically, the County found that the
benefits provided to affected lands include by way of example and not limitation, the availability of facilities to properly and safely dispose of solid waste generated on improved residential lands, closure and the long term monitoring of the facilities, a potential increase in value to improved residential lands, better service to owners and tenants, and the enhancement of environmentally responsible use and enjoyment of residential land.
Clay County, Fla., Final Assessment Resolution 93-23 (Dec. 8, 1992). Moreover, in the background information provided in the assessment itself, the County stated:
The County must, by law, provide solid waste disposal facilities for all residents and it is only fair that the associated costs be shared by all residents. Unfortunately, some County residents dispose of their solid waste through unapproved or illegal methods and therefore do not pay their fair share of the disposal cost. Depositing solid waste into someone else's container or dumpster is just as illegal as dumping it on the County's roadways. These types of activities not only harm the environment, but increase the cost of disposal for those residents who do comply with the law.
....
The only way for the County to minimize each resident's solid waste cost is to ensure that every resident participates in funding the cost of providing solid waste disposal and recycling services. The assessment program provides a method that ensures that all county residents pay their share for services the County must provide.
Clay County, Fla., Partial Year Solid Waste Disposal Assessment (1993). These benefits provided to the assessed properties by solid waste disposal and recycling services are similar to the benefits provided by the polluted *948 stormwater runoff treatment services that we recently found specially benefitted the properties being assessed in Sarasota County. In Sarasota County, the County was legislatively required to treat stormwater for the protection of the environment which, in turn, benefitted the properties being assessed; the amended statute requiring such treatment specifically provided that the collection of the cost of the treatment could be by assessment; and only developed properties were to be assessed because those were the properties that contributed to the stormwater problem. In finding that the provision of stormwater services at issue in that case conferred special benefits to the properties assessed, we compared the benefits provided by those services to the special benefits received from the collection and disposal of solid waste referred to in Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977) (special assessment approved for solid waste services implemented due to inundation of public dumping). Likewise, in the instant case, the County is legislatively required to properly dispose of solid waste;[2] the legislature has provided that the collection for the cost of the disposal can be by assessment;[3] the properties are benefitted by the services provided for disposal of solid waste; and only developed residential properties in the unincorporated areas of the county are to be assessed because those are the properties that contribute to the solid waste disposal problem for which the county is unable otherwise to adequately obtain payment to cover the cost of disposal. In view of these findings, we agree with the trial and district courts' determinations that Clay County did not act arbitrarily in finding that the properties in question were specially benefitted by the provision of disposal services. See Sarasota County; South Trail Fire Control Dist. v. State, 273 So.2d 380 (Fla.1973) (question of what constitutes special benefit is a matter of judgment that courts should not overturn in the absence of a clear and full showing of arbitrary action or plain abuse).
In regard to the apportionment issue, the County made the following findings:
It presently does not appear necessary to impose a solid waste disposal assessment in incorporated areas of the County due to (1) the compactness or intensity of development in incorporated areas being conducive to more efficient commercial service to improved properties within incorporated areas and (2) the current recovery of disposal costs allocable to improved properties within incorporated areas via tipping fees charged for disposal at a solid waste disposal facilities.
The existence of any building or other improvement on residential property results in such property generating solid waste or being capable of generating solid waste.
The imposition of a partial year solid waste disposal assessment is an equitable and efficient method of allocating and apportioning the solid waste disposal cost among parcels of residential property within the unincorporated area of the County.
Clay County, Fla., Ordinance 92-26 (Nov. 10, 1992). Additionally, the affidavits submitted by the County reflected:
The amount of the assessment imposed upon improved residential property within the unincorporated area of Clay County is equal to the cost of the processing and disposal of solid waste generated from such residential property for the period of January 1, 1993, to September 30, 1993. The assessment is imposed equally upon all improved residential property located within the unincorporated area of Clay County. No profit is included within the partial year solid waste disposal assessment. The amount of the assessment is apportioned to the properties subject to the assessment in an amount equal to or less than the benefit received by such properties.

*949 The cost of providing for the processing and disposal of solid waste from properties located within the municipalities and for commercial and other nonresidential properties within the unincorporated area are collected through tipping fees at the disposal site. The tipping fees imposed are equal to the cost of the processing and disposal of the solid waste generated from such properties. The determination not to impose the partial year solid waste disposal assessment upon commercial properties in the unincorporated area is based upon the varying production of solid waste generated from commercial properties.
In adopting the assessment, the County also provided for an annual vacancy credit, which affords any owner of residential property who can demonstrate that a dwelling unit thereon was unoccupied and vacant during the entire assessment period the right to receive reimbursement for any assessment paid for the vacant property.
In sum, the County determined that the assessment would not be levied against residential property owners within the City or against commercial property owners because other efficient means of ensuring payment for the disposal of those property owners' solid waste existed. However, the assessment against residential property owners in the unincorporated areas of the County was necessary to ensure that "all county residents pay their share for services the County must provide" due to the illegal dumping engaged in by some residents. See Clay County, Fla., Partial Year Solid Waste Disposal Assessment (1993). Because the amount of the assessment reflects the actual cost of providing disposal services and facilities to the properties subject to the assessment, the cost is equally distributed among the assessed properties and bears a rational relationship to the benefits received by the properties assessed, and the determination as to which residents are to be assessed is reasonable, we agree with the trial and district courts' conclusion that the method of apportionment of the assessment is not arbitrary.
Accordingly, for the reasons expressed, we find that the County's findings regarding the questions of special benefit and method of apportionment were not arbitrary, and we approve the district court's decision affirming the validation of the special assessment in this case.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which HARDING, J., concurs.
WELLS, Justice, dissenting.
I dissent. The majority opinion completely obliterates the distinction between ad valorem taxes and special assessments. The majority has effectively erased from "special assessment" the word "special." When there is nothing special about an "assessment," logic and common sense dictate that the assessment is a tax. See Fisher v. Board of County Comm'rs, 84 So.2d 572 (Fla.1956).
The majority has eradicated "special" in that the majority's focus in justifying what the county imposed is not upon whether the assessed property receives any benefit that is special or peculiar in the enhancement of that property's value. Such an analysis has been a historical feature of Florida's special assessments. City of Boca Raton v. State, 595 So.2d 25 (Fla.1992); Klemm v. Davenport, 100 Fla. 627, 129 So. 904 (1930). Rather, the majority's focus is upon the fact that this was the efficient means of ensuring that the owners of residential property in unincorporated areas of the county paid a part of the costs of the dump. The majority notes that "other efficient means of ensuring payment for the disposal" of solid waste existed for the owners of commercial property or those whose property was within a municipality. The majority also finds the assessment appropriate for residential properties in unincorporated areas because those are the properties "for which the county is unable otherwise to adequately obtain payment to cover the cost of disposal." This justification describes an administrative solution for the government, not a special benefit for the property in question. In sum, the majority approves what the county has enacted because it is an efficient collection device, not *950 because it meets the previously recognized criteria for a special assessment.
I believe the Fifth District made a cogent analysis of this issue in Water Oak Management Corp. v. Lake County, 673 So.2d 135 (5th DCA), review granted, 683 So.2d 483 (Fla.1996):
There is little doubt based on prior case law that fire protection services provide a benefit to the properties assessed. Less obvious is whether the benefit is special. In the instant case, Lake County urges that the requisite special benefit to the assessed properties is present because such services "protect persons who reside, occupy or have reason to be present at such property, provides better service to actual and potential occupants of property, and enhances the public safety of such property." "Special" doesn't mean a benefit to property that it wouldn't otherwise enjoy; it is supposed to mean different in type or degree from benefits provided the community as a whole. Cf. § 170.01(2) (Fla.Stat.1995). We appreciate the point made by the Florida Supreme Court in its recent decision in Sarasota Church of Christ that a special assessment need not be limited to a specific area or class of property owners and that there may be a special benefit whether the recipients "are spread throughout an entire community or are merely located in a limited specified area within the community." 667 So.2d at 183. Even the supreme court took pains in Sarasota Church of Christ to identify the special benefit to the specially assessed property, i.e. supplying a means of dealing with storm water runoff from the improved properties, which were the ones with impervious surface area generating runoff. In Sarasota Church of Christ, the special assessment deemed valid was designed to provide a remedy for the special problems or burdens such improved properties create. In this case, however, as far as we can tell, every piece of real property, personal property and every person in unincorporated Lake County has access to the same basic garden variety Lake County fire protection services. The "special assessment" merely funds an undifferentiated service for the county in general and is designed to reduce costs of this service that would otherwise come from general revenue funded by ad valorem taxes.
673 So.2d at 138 (footnote omitted).
My overarching concern is that the majority's decision fosters government that is not straightforward or honest about revenue raising. The citizens of this state have voted for millage caps on ad valorem taxes[4] and for homestead exemption from levy of ad valorem taxes.[5] However, the majority's decision now allows governments to give these voter mandates a wink and a nod and then circumvents them by semantics in labeling as a special assessment what actually is a tax. Voters are the victims of such deception, and I believe this Court should protect them from it.
HARDING, J., concurs.
NOTES
[1] We decline to discuss the issue of whether the trial court properly excluded the homeowner's documents, finding that this issue was properly disposed of by the district court.
[2] Pursuant to section 403.706(1), Florida Statutes (1995), the County has the primary responsibility and authority to provide for the operation of solid waste disposal facilities to meet the needs of all incorporated and unincorporated areas within the County.
[3] Section 125.01(1)(q), Florida Statutes (1995), provides that garbage disposal facilities may be funded through the imposition of special assessments.
[4] Article VII, section 9(b), Florida Constitution, provides:

Ad valorem taxes ... shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; for water management purposes for the northwest portion of the state lying west of the line between ranges two and three east, 0.05 mill; for water management purposes for the remaining portions of the state, 1.0 mill; and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.
[5] Article VII, section 6(a), Florida Constitution, provides in pertinent part:

Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars, upon establishment of right thereto in the manner prescribed by law.