In re OLDE FLORIDA INVESTMENTS, LTD., Debtor.

Olde Florida Investments, Ltd., Plaintiff,

v.

Port of the Islands Community Improvement District, Arthur R. Piper, Charles J. Alaimo, Collier County Tax Collector, First Union National Bank, as Custodian for Fundco, Inc., First Union National Bank, as Custodian for Holdco, Inc., First Union National Bank, as Custodian for Direct Lien Funding Co., Heartwood '88, Inc., Leon McCaskey, Nellie Kirby, Robert L. Hill, Rose Marie Desimone and Allstate Insurance Company, Defendants.

Bankruptcy No. 01–5321–9P1.
Adversary No. 01–213.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Dec. 7, 2001.

Louis X. Amato, Louis X. Amato, P.A., Stephany S. Carr, Naples, FL, for plaintiff.

Clay Booker, Naples, FL, Richard P. Zaretsky, West Palm Beach, FL, Gregory T. Stewart, Tallahassee, FL, Erik P. Kimball, Orlando, FL, Harold D. Moorefield, Miami, FL, for defendants.

### ORDER GRANTING MOTION TO DISMISS

(Doc. No. 49)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 11 case filed by Olde Florida Investments, Ltd. (Debtor) is a Motion to Dismiss the first amended complaint [Doc. No. 49], filed by Allstate Insurance Company (Allstate), in the above-referenced adversary proceeding. The Debtor, in its first Amended Complaint [Doc. No. 47] (Complaint), seeks (i) a determination of the amount and legality of certain tax liability and (ii) a determination of the validity, priority and extent of certain liens. In the Complaint, the Debtor names as defendants several entities. Initially, the Debtor did not name Allstate as a party defendant. By Order of this Court, Allstate's Motion to Intervene as a party defendant was granted. The Debtor filed the Complaint and Allstate filed its Motion to Dismiss the Complaint, which is the matter under consideration at this time.

It is the contention of Allstate that the debt, which is secured by a lien upon the Debtor's property, is not a "tax," and therefore, this Court lacks jurisdiction pursuant to Section 505(a) of the Bankruptcy Code to determine the extent, validity and legality of the tax. In addition, Allstate contends that the Complaint failed to join certain indispensable parties and, therefore, the Complaint cannot be maintained unless other parties are joined in as defendants.

The facts as appear from the record are without dispute and can be briefly summarized as follows:

The real property, which is involved in this controversy, is located in a special area governed in part by the Port of the Islands Community Improvement District (the District). The District is a local unit of special purpose local government established pursuant to Chapter 190, Florida Statutes, which authorizes the District to perform various specialized functions. These functions include, but are not limit-

ed to, provisions of various public improvements and community facilities, services and infrastructure and to fund such facilities, and services and infrastructure through various revenue sources including non-ad valorem assessments. Moreover, the District is authorized to issue bonds.

On or about October 25, 1990, the District issued a $7,000,000 Special Assessments Bonds, Series 1990 (Bonds) pursuant to, *inter alia,* a resolution duly adopted by the Board of Supervisors of the District dated October 18, 1990, and a Trust Indenture, dated as of October 1, 1990, between the District and First Union National Bank of Florida (Trust Indenture). The Bonds were issued and sold to provide proceeds for the funding of various water, wastewater and road improvements, which specifically benefit the property within the District. Repayment of the Bonds is secured by "Pledged Revenues," as described in the Trust Indenture, which included revenues from Special Assessments levied by the District against benefited properties. "Special Assessments" are defined in the Trust Indenture as follows:

The net proceeds derived from the levy and collection of non ad valorem assessments as defined in Section 197.3632, Florida Statutes, levied against the properties located on the District Lands that are specially benefited by the acquisition and construction of the Project, including the interest and penalties on such Special Assessments, pursuant to all applicable provisions of the Act and Chapter 170, Florida Statutes, and Chapter 197, Florida Statutes, including, without limitation, any amount received from any foreclosure proceeding for the enforcement of collection of such Special Assessments or from the issuance and sale of tax certificates with respect to such Special Assessments, less the fees and costs of collection thereof payable to the Tax Collector and less certain administrative costs payable to the Property Appraiser pursuant to the Property Appraiser and Tax Collector Agreement.

Allstate purchased 100% of the Bonds on October 25, 1990 and remains the current beneficial owner of 100% of the outstanding Bonds issued by the District. Proceeds of the Special Assessments are the primary source of repayment of the Bonds. The Special Assessments apportion the total debt of the Bonds among the benefited real property within the District. The District is contractually obligated, pursuant to Section 9.03 of the Trust Indenture, to collect the total debt of the Bonds. Thus, if the amount of the Special Assessments allocated to one parcel is altered, it will necessarily impact upon the amount of the Special Assessments imposed upon other benefited properties, as their assessments will be required to be altered to address the difference.

As noted earlier, the Debtor seeks a determination of the validity and extent of the special assessment pursuant to Section 505(a) of the Bankruptcy Code. This section of the Bankruptcy Code provides as follows:

The court may determine the amount or legality of any tax, any fine or penalty relating to a tax or any addition to tax, whether or not previously assessed, whether or not paid and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1).

■■■■ It is well established that whether a particular obligation is a tax within the meaning of this section is a federal question. *City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *County Sanitation Dist. No. 2 of Los Angeles v. Lorber In-*

*dus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.)*, 675 F.2d 1062, 1066 (9th Cir. 1982). It is also well established that whether or not an obligation is a tax for the purpose of Section 505 the Bankruptcy Court, shall be determined by the factors considered by bankruptcy courts in general. And, the name given to a particular obligation is not relevant for the purposes of this determination. This is the issue generally raised in the context of a claimed priority of a particular obligation, either under Section 503 or 507 of the Bankruptcy Code.

■■■ The factors which courts consider are set forth in *Lorber* and are as follows:

(1) an involuntary pecuniary burden, regardless of name, laid upon individuals property;

(2) imposed by, or under authority of the legislature;

(3) for public purposes, including the purposes of defraying expenses of government or undertaking authorized by it; and

(4) under the police or taxing power of the state.

*Lorber*, 675 F.2d at 1066. The special assessment in question is clearly imposed under the authority of the legislature. And, Allstate concedes that the fourth prong has likewise been satisfied. Allstate therefore contends that the issue for determination is (i) whether the assessment is an involuntary pecuniary burden and (ii) whether the assessment results in a public benefit or a private benefit.

It is evident that a special assessment is made to confer private benefits to the Debtor and other property owners in this special taxing district. It is not made to assist the government, in general, to perform its governmental functions. It is clear then the fee is levied in proportion to the use and the value of the benefit received, and the benefit is held to be private. In *Lorber* supra, the non-secured creditors contended that the wastewater fees assessed by the users were not taxes because processing and disposal of excess wastewater benefits specific identifiable properties, not society at large. *Lorber*, 675 F.2d at 1067.

While it is contended by Allstate that the special assessments required to be paid are voluntary payments, facially that does not appear to be the case since the homeowner in the district has no option to pay or not to pay. However, to overcome this, Allstate contends that it is still a voluntary payment because the Debtor knowingly chose to purchase the property in the taxing district and knew that assessments were being made on the properties. Therefore, this voluntary decision to purchase the property voluntarily submitted the property in question to a special assessment tax.

While the interpretation and construction of the term "tax" by Florida courts is not governing, it is illustrative. Florida courts long recognize the distinction between taxes and special assessments as set forth in the case of *Klemm v. Davenport*, 100 Fla. 627, 129 So. 904 (1930). In *Klemm*, the Florida Supreme Court stated:

A "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A "special assessment" is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that a portion of the commu-

nity which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially.

*Klemm,* 129 So. at 907–908.

In the case of *Lake County v. Water Oak Management,* 695 So.2d 667 (Fla. 1997), the Florida Supreme Court recited the controlling two-prong test in determining whether or not the imposition is an assessment or a tax and stated that the properties burdened by the assessment must derive a special benefit from the service provided by the assessment and the assessment for services must be properly apportioned. *Lake County,* 695 So.2d at 669, *citing City of Boca Raton v. State,* 595 So.2d 25, 30 (Fla.1992).

In sum, although it appears that the special assessment involved here is not a tax, the Debtor has asserted that the same may be an illegal assessment, and therefore under Florida law may be deemed to be a taxes, which this Court may consider under Section 505(a) of the Bankruptcy Code. Therefore, this Court maintains jurisdiction to consider the determination of the validity, extent and legality of the assessment pursuant to Section 505(a) of the Bankruptcy Code. The facts as alleged in the Complaint are sufficient to overcome a motion to dismiss. Moreover, there is hardly any question that this Court has jurisdiction to determine the validity, priority or extent of a lien or other interest in property pursuant to 28 U.S.C. 157(b)(2)(K), which requires the commencement of an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001. The matter is a core matter and this Court certainly has subject matter jurisdiction to entertain a properly asserted claim under this statutory grant of power, which is the validity, extend and priority of a lien securing the special assessments.

This leaves for consideration the additional grounds for consideration of Allstate's contention that the Debtor failed to join indispensable parties. Having concluded earlier that under the applicable statute, in the event the amount of the assessment against the Debtor's property is altered or changed, both Section 170.14 of the Florida Statutes and the Trust Indenture, Section 5.03 itself, require the reallocation of the assessment and the increase of the allocation as to each of the other property owners. This being the case, it is clear that the rights of other property owners who are not parties to this litigation are vitally affected. Therefore, they are deemed to be indispensable parties and unless joined as defendants the Complaint is defective and subject to dismissal. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion To Dismiss the Complaint [Doc. No. 49] be, and the same is hereby granted. It is further

ORDERED, ADJUDGED AND DECREED that the Complaint, as framed, shall be dismissed without prejudice with leave granted to file an amended complaint within twenty (20) days from the date of entry of this Order to add certain indispensable parties if the Debtor so deemed go be advised.