Dear Mr. Gardner:
You ask substantially the following question:
May a non-ad valorem assessment imposed on the common elements of a subdivision be shifted to the individual lot owners pursuant to section193.0235, Florida Statutes, when the bond to be repaid by the special assessment was issued with the common elements as collateral prior to the enactment of section 193.0235, Florida Statutes?
You state that a non ad valorem assessment has been in place since 1991 to repay a bond which was issued to pay for the construction of a road which meanders through several neighborhoods. The assessment is presently in place against the common areas of a gated community. You have been asked to shift the burden of paying the special assessment on the common areas from the homeowners association who holds title to the common area and prorate it to the individual lot owners.
Section 193.0235(1), Florida Statutes, provides:
 "Ad valorem taxes and non-ad valorem assessments shall be assessed against the lots within a platted residential subdivision and not upon the subdivision property as a whole. An ad valorem tax or non-ad valorem assessment, including a tax or assessment imposed by a county, municipality, special district, or water management district, may not be assessed separately against common elements utilized exclusively for the benefit of lot owners within the subdivision, regardless of ownership. The value of each parcel of land that is or has been part of a platted subdivision and that is designated on the plat or the approved site plan as a common element for the exclusive benefit of lot owners shall, regardless of ownership, be prorated by the property appraiser and included in the assessment of all the lots within the subdivision which constitute inventory for the developer and are intended to be conveyed or have been conveyed into private ownership for the exclusive benefit of lot owners within the subdivision."
This subsection was enacted during the 2003 Legislative Session in response to instances in several residential subdivisions in which an individual purchased neighborhood common property at a tax sale, then offered to sell the property back to the individual lot owners at an inflated price.[1] The legislative history of the bill, however, does not include any discussion of the impact on special assessments in place prior to the bill's enactment, or on existing bonds and the collateral which has been used to secure them.
Generally, substantive statutes operate prospectively only, unless the Legislature has expressly provided that the statute be applied retroactively.[2] Nothing in the language of the act contemplates its application to assessments that were imposed prior to its enactment.
An additional concern is the constitutional prohibition against a statutory enactment operating to impair existing contractual obligations.[3] In this instance, there would appear to be contractual rights created between the bond holders and the issuing entity which may be affected by altering the collateral which secures the bonds. Given the substantial rights that are vested in the issuance of a bond and the terms of its repayment by a special assessment upon the property which benefits from the improvement financed by the bond, I cannot conclude, absent specific legislative direction, that the provisions in section193.0235(1), Florida Statutes, may be applied to alter the terms of a special assessment that predate the enactment of the statute.
An "assessment for special benefits" is customarily a fixed amount assessed against a particular parcel of land arrived at by totaling the cost of a public improvement and apportioning it against abutting property specially benefitted usually on a front foot or acreage basis without regard to ad valorem valuation of the land. While it is most often payable in annual installments, the amount of such installments is usually fixed at the time the initial levy is made and does not fluctuate from year to year as the result of changes in ad valorem valuation or increases in the cost of maintaining the improvement.[4]
This office has previously stated that although property appraisers are constitutional county officers, they possess no common law powers, but rather derive their powers and authority from statute.[5] No statutory authority has been brought to this office's attention that would allow a property appraiser to transfer an existing special assessment imposed upon a particular parcel of real property to another.
Accordingly, it is my opinion that the property appraiser may not shift an existing non-ad valorem assessment imposed on the common elements of a subdivision to the individual lot owners pursuant to section 193.0235, Florida Statutes, when the bond to be repaid by the special assessment was issued with the common element as collateral prior to enactment of the statute.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] See House of Representatives Staff Analysis, HB 1721, April 22, 2003.
[2] See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352 (Fla. 1994) (substantive statute is presumed to operate prospectively rather than retroactively unless clear expression of legislative intent to the contrary); Young v. Altenhaus, 472 So. 2d 1152 (Fla. 1985); Fogg v.Southeast Bank, N.A., 473 So. 2d 1352 (Fla. 4th DCA 1985) (statutes generally operate only prospectively); and Middlebrooks v. Department ofState, Division of Licensing, 565 So. 2d 727 (Fla. 1st DCA 1990) (prohibition against retroactivity of statute requires prospective operation unless language in statute explicitly prescribes retroactive application).
[3] Section 10, Art. I, State Const. 
[4] See Fisher v. Board of County Commissioners of Dade County, 84 So. 2d 572, 579 (Fla. 1956); City of Boca Raton v. State,595 So. 2d 25,29
(Fla. 1992), in which the Court explained the distinction between special assessments and taxes:
 "[A] legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment. . . .
 A tax is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A special assessment is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity and may be determined legislatively or judicially."
(quoting Klemm v. Davenport, 100 Fla. 627, 631-32, 129 So. 904, 907-08
(1930).
[5] See, e.g., Ops. Att'y Gen. Fla. 80-65 (1980) and 78-94 (1978) and authorities cited therein.